# EXHIBIT 3

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 45344    Page 1 of 15

Case 1:08-cv-01091    Document 28-4    Filed 07/11/2008    Page 2 of 16

*2005 U.S. Dist. LEXIS 45344, \**

PAUL VANDER VENNET, PATRICK BRACEY, LORI ESTELL, HARRISON, LORI LANGER, RANDY MYERS, GARY SEVERS, ERIC SKARPAC, JOHN TAMEL, KARIN ODDESN-TAYLOR, MICHAEL THRASHER, and ANGELA WHITE, and other similarly situated persons, Plaintiffs, v. AMERICAN INTERCONTINENTAL UNIVERSITY ONLINE, CAREER EDUCATION CORPORATION, and STEVE FIRENG, an individual, Defendants.

No. 05 C 4889

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2005 U.S. Dist. LEXIS 45344

December 22, 2005, Decided
December 22, 2005, Filed

**SUBSEQUENT HISTORY:** Motion granted by, Motion granted by, in part, Motion denied by, in part Vennet v. Am. Intercontinental Univ. Online, 2006 U.S. Dist. LEXIS 22309 (N.D. Ill., Apr. 5, 2006)

**CORE TERMS:** overtime, lawsuit, notice, class certification, advisor, collective action, collateral estoppel, join, present case, collateral estoppel, similarly situated, res judicata, supervisor, discovery, final judgment, nationwide, deposition, sur-reply, FAIR LABOR STANDARDS ACT, federal law, class actions, preclusive effect, res judicata, settlement, estoppel, joined, opt-in, modest, common questions, prior adjudication

**COUNSEL:** [\*1] For Paul Vander Vennet, Patrick Bracey, Lori Langer, Randy Myers, Gary Severs, Eric Skarpac, John Tamel, Karin Oddsen-Taylor, Michael Thrasher, Angela White, and other similarly situated persons, Plaintiffs: Robin B. Potter, LEAD ATTORNEY, Robin Potter & Associates P.C., Chicago, IL; Gregory O. Wiggins, Wiggins, Childs, Quinn, Pantazis, LLC, Birmingham, AL; Robert F Childs, Jr, Wiggins, Childs, Quinn & Pantazis, Birmingham, AL; Robert L. Wiggins, Jr., Wiggins, Childs, Quinn & Pantazis, LLC, Birmingham, AL; Rocco Calamusa, Jr., Wiggins Ghilds quinn & Pantazis, LLC, Birmingham, AL; Timothy John Coffey, The Coffey Law Office, P.C., Wheaton, IL.

For Patricia Aguila, Serena Alam, Patti M. alonzo, Sean Baker, Eric Barker, Joseph M. Bove, Adrian Clarke, Nathan Crawford, Heather Cruz-Santiago, Kolyan DasGupta, Sheena Drew, Brian Elliott, Kim Hines Forrester, Benjamin Friziellie, Nathan Garmatz, Amanda Goodwin, Ashley Gordon, Elio Gorgievski, Warren Green, Henry Gutwirth, Sarah Hennis, Kimberly (McCaffrey) Jackson, Gerard E. Jones, Lauren Mazz Kautman, Bob W. Kersey, Heather Ashton Klemp, Jenni Knight, Richard D. Koenig, John Korntheuer, Charles Leslie, Renessa Leslie, Alexander Martel, Thomas [\*2] Melcher, Angela L. Milton, Elizabeth Oglesby, Geri Pettis, Rene Peyton, Darryl K. Phillips, Elina Prudinsky, Karen Reed, Marianne T. Romito, Carolyn Schmitke, Daniel Shain, Sherry A. Sharp, Elizabeth Stevenson, Michael J. Widrlechner, Quandra Wilcoxon, Fatina Williamsbey, Jon Woodall, Bonnetta Wynn, David J. Bourgeois, Deborah Bradford, Rachel Clark, Cobina Gibson, William Gregory Lotz, Plaintiffs: Gregory O. Wiggins, Wiggins, Childs, Quinn, Pantazis, LLC, Birmingham, AL; Robert F Childs, Jr, Wiggins, Childs, Quinn & Pantazis, Birmingham, AL; Robert L. Wiggins, Jr., Wiggins, Childs, Quinn & Pantazis, LLC, Birmingham, AL; Robin B. Potter, Robin Potter & Associates P.C., Chicago, IL; Rocco Calamusa, Jr., Wiggins Ghilds quinn & Pantazis, LLC, Birmingham, AL.

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 45344    Page 2 of 15

Case 1:08-cv-01091    Document 28-4    Filed 07/11/2008    Page 3 of 16

For Tiffany Belmonte, Aaron M. Evans, Florence Foy, Katrina M. Moore, Adam Watson, Beth Engelhard Harkins, Michael Montagano, Sean Perlman, Tara Rice, Dennis West, Sanita R. Lewis, Vernon Parker, Alif Ramsey, Jamie Sutherland, Terry Wilkerson, Matt Doyle, Wilfred Marc Johnson, Lloyd Owusu, William M. Parker, II, Jeffrey Whatley, Timothy Battle, Sheila Y. Carter, Asma Hashmi, Samuel Lamb, Edie McCabe, Ken Miller, Christine Raczkiewycz, [*3] Kenneth Roberts, Angela M. Whittier, Philip J. Carroll, Nicholas R. Crear, Nancy J. Graham, Jeanette Ratajczak, Torrey Williams, Wendy Williams, Robert Chambers, Kirk Hammond, Keith Hawkins, Lori Linder, Patricia McGill, Kevin Moran, Jr., Jose Luis Santos, Jr., Gwendalyn Thompson, Donna Gurecki, Sekena Holloway, Darrin Meyer, Azuka Oji, Dontele LaPriest Addison, Stephanie Biles, Kristopher Bryant, Jason Cordova Sinohui, Virginia Marie Davis, Sheri Khan, Patricia Pace Mattison, Nicholas Murphy, Maurice D. Proffit, Zakiyyah Seifullah, Lawrence Spruill, Victoria Williams, Anthony Zito, Angelique Albert, Eddie DuBose, Robert Geltner, James M. Latuszek, Joi S. Morris, Aaron J. Warren, James Bernath, Antwaun Hunter, Glenn Lowe, Bridget O'Berry, Tia L. Robinson, Todd Shelby, Anthony Ward, Chris Anderson, Veronica M. Coleman, Larry Lewis, Dushawn McNabb, Gandlyn K. Ross, Lawrence Sarpong, Georgi T'Velil, Susan Devereaux, Michael Morgan, Lance Norwood, Erik Redd, Plaintiffs: Robin B. Potter, LEAD ATTORNEY, Robin Potter & Associates P.C., Chicago, IL; Gregory O. Wiggins, Wiggins, Childs, Quinn, Pantazis, LLC, Birmingham, AL; Robert F Childs, Jr, Wiggins, Childs, Quinn & Pantazis, Birmingham, [*4] AL; Robert L. Wiggins, Jr., Wiggins, Childs, Quinn & Pantazis, LLC, Birmingham, AL; Rocco Calamusa, Jr., Wiggins Ghilds quinn & Pantazis, LLC, Birmingham, AL.

For American Intercontinental University Online, Career Education Corporation, Steve Fireng, an Individual, Defendants: James M. Gecker, LEAD ATTORNEY, Gil M. Soffer, Jeffrey L Rudd, Kyle Anne Petersen, Stuart Jay Chanen, Katten Muchin Rosenman LLP, Chicago, IL.

**JUDGES:** William T. Hart, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** William T. Hart

**OPINION**

### MEMORANDUM OPINION AND ORDER

Plaintiffs allege that they were employed in telemarketing positions for defendant American Intercontinental University Online ("AIU"). Also named as defendants are AIU's corporate parent Career Education Corporation ("CEC") and Steven Fireng, who is alleged to be an officer and employee of both corporate defendants. All three defendants are alleged to be "employers" as that term is used in the three statutes upon which plaintiffs base their claims. Plaintiffs allege that defendants wilfully failed to pay them overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 213(a)(1); the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/4(a); and the Illinois Wage Payment [*5] and Collection Act ("IWPCA"), 820 ILCS 115/4. [1]

### FOOTNOTES

[1] The IWPCA claim is based on an alleged contractual obligation to pay the overtime.

CEC is a nationwide, for-profit education institution. CEC has "brick and mortar" schools that are not the subject of this lawsuit. AIU is a CEC subsidiary that provides undergraduate and graduate educational programs via the Internet. Twelve plaintiffs affirmatively joined in this lawsuit. [2] All the plaintiffs worked as admissions advisors for AIU for various periods of time

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 45344    Page 3 of 15

Case 1:08-cv-01091    Document 25-4    Filed 07/11/2008    Page 4 of 16

from as early as March 2002 until as late as November 2004. With one possible exception, none of the eleven remaining plaintiffs are currently employed by AIU. [3] As admissions advisors, plaintiffs essentially were telemarketers attempting to sell prospective students on enrolling in AIU. AIU admissions advisors worked in teams of approximately 25 employees. Teams were within a management structure that included senior admissions advisors, assistant directors of admissions, and directors of admission. The twelve plaintiffs are alleged to have been assigned to at least ten different teams. Defendant Fireng allegedly supervised the daily operations of AIU, but defendants dispute whether [*6] he was involved in supervising the daily activities of admissions advisors.

**FOOTNOTES**

[2] One plaintiff, Tracy Harrison, recently settled her FLSA claim against AIU as part of a settlement of employment discrimination claims she had against AIU and CEC. Since the settlement has been approved, Harrison is no longer a plaintiff in this lawsuit.

[3] Plaintiff Lori Langer is alleged to have been on a disability leave of absence since December 2003. It is not expressly alleged whether she is still considered to be an employee while on such leave. It is clear that she is not alleged to have been an active employee as of the November 2, 2005 filing of the First Amended Complaint.

Presently pending is plaintiffs' motion to send notice to an FLSA opt-in class as provided for in 29 U.S.C. § 216(b). See generally Nunez v. Pizza Nova, Inc., 2003 U.S. Dist. LEXIS 23279, 2003 WL 23150111 *1 (N.D. Ill. Dec. 30, 2003). Defendants oppose that motion on three grounds. Relying on In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation, 333 F.3d 763 (7th Cir. 2003) ("Bridgestone II"), defendants contend that the denial of class certification in a similar state court case precludes plaintiffs from requesting § 216(b) class notice in a [*7] successive case such as the present one. Alternatively, defendants contend that a § 216(b) class should be denied because, based on the state court ruling, plaintiffs are collaterally estopped from asserting facts necessary to support a § 216(b) class. To the extent those arguments fail, defendants contend this is an inappropriate case for sending notice to an opt-in class.

Federal Rule of Civil Procedure 23 does not apply to the present case. Any collective action [4] is limited by the provision of 29 U.S.C. § 216(b) which requires that any plaintiff joined in this action consent to be a plaintiff, that is, any additional plaintiffs must opt in. King v. General Electric Co., 960 F.2d 617, 621 (7th Cir. 1992); Flores v. Lifeway Foods, Inc., 289 F. Supp. 2d 1042, 1043-45 (N.D. Ill. 2003). In appropriate circumstances, the court may order that notice be sent to potential class members advising them of the option of joining in the case. See Woods v. New York Life Insurance Co., 686 F.2d 578, 580 (7th Cir. 1982). Generally, to be entitled to have such notice sent, plaintiffs first must make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were [*8] victims of a common policy or plan that violated the law." Flores, 289 F. Supp. 2d at 1044 (quoting Taillon v. Kohler Rental Power, Inc., 2003 U.S. Dist. LEXIS 7275, 2003 WL 2006593 *1 (N.D. Ill. April 29, 2003)). See also Infantino v. Martam Construction, Inc., 2005 U.S. Dist. LEXIS 14391, 2005 WL 3132362 *1 (N.D. Ill. July 18, 2005); Veerkamp v. U.S. Security Associates, Inc., 2005 U.S. Dist. LEXIS 5835, 2005 WL 775931 *2 (S.D. Ind. March 15, 2005); Nunez, 2003 U.S. Dist. LEXIS 23279, 2003 WL 23150111 at *1; Champneys v. Ferguson Enterprises, Inc., 2003 U.S. Dist. LEXIS 4589, 2003 WL 1562219 *4 (S.D. Ind. March 11, 2003); Bontempo v. Westwood One Broadcasting Services, Inc., 2002 U.S. Dist. LEXIS 11810, 2002 WL 1925911 *1 (N.D. Ill. May 3, 2002); Garza v. Chicago Transit Authority, 2001 U.S. Dist. LEXIS 6132, 2001 WL 503036 *2 (N.D. Ill. May 8, 2001). The other employees need not be in the same identical job or situation. Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir.), cert. denied, 519 U.S. 982, 987, 117 S. Ct. 435, 136 L. Ed.

2d 332 (1996); *Champneys,* 2003 U.S. Dist. LEXIS 4589, 2003 WL 1562219 at *5; *Bontempo,* 2002 U.S. Dist. LEXIS 11810, 2002 WL 1925911 at *1; *Garza,* 2001 U.S. Dist. LEXIS 6132, 2001 WL 503036 at *3; *Flavel v. Svedala Industries, Inc.,* 875 F. Supp. 550, 553 (E.D. Wis. 1994). Unless defendants admit in their answer or briefs that other similarly situated employees exist, plaintiffs cannot rely on their allegations alone to make the required modest factual showing. [*9] Plaintiffs need not provide conclusive support, but they must provide an affidavit, declaration, or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy.

**FOOTNOTES**

4 Actions pursuant to § 216(b) are often referred to as "collective" or "representative" actions, not "class" actions. See *Veerkamp v. U.S. Security Associates, Inc.,* 2005 U.S. Dist. LEXIS 5835, 2005 WL 775931 *1 (S.D. Ind. March 15, 2005).

There are other pending cases involving the issue of overtime pay for AIU admissions advisors for periods of time that overlap with the present case. None of the named plaintiffs in those cases are plaintiffs in the present case, but all are represented by the same attorneys that represent the plaintiffs in the present case. In a case pending in this court, two plaintiffs have brought individual claims for violation of the FLSA, IMWL, and IWPCA. See *Skelton v. AIU,* 382 F. Supp. 2d 1068 (N.D. Ill. 2005) (No. 03 C 9009). In *Skelton,* there has been no motion to send notice to potential opt-ins. The *Skelton* case had been set for trial in December, but recently had a settlement conference. 5 In the Circuit Court of Cook County, Illinois, a case is pending [*10] in which three plaintiffs claim violations of the IMWL and IWPCA. See *Finnigan v. AIU,* No. 03 CH 18335 (Cir. Ct. Cook Cy., Ill., Chancery Div.). 6 In that case, the named plaintiffs moved for class certification under the Illinois Code of Civil Procedure. See 735 ILCS 5/2-801 to 2-806. 7 In an order dated June 17, 2005, 8 class certification was denied on the ground that the § 2-801(2) requirement that common questions predominate was not satisfied. 9 *Finnigan* Order at 4-6. The parties agree that all the plaintiffs in the present class were part of the class proposed in *Finnigan,* but never certified. Based on the *Finnigan* Order, defendants contend that issuing an opt-in notice is foreclosed in the present case.

**FOOTNOTES**

5 As of the morning of December 22, 2005, the docket sheet in *Skelton,* did not contain any entry following the December 16, 2005 settlement conference.

6 There is no indication from either side in the present case that any judgment has been entered in *Finnigan.* The limited docket information available on Westlaw indicates that the last order in the case is that there was a continuance to January 19, 2006.

7 These Rules are similar, but not identical, to Fed. R. Civ. P. 23.

8 Both parties [*11] provide a copy of this order as an exhibit to one of their briefs. This order will be referred to as: "*Finnigan* Order."

9 Unlike the Federal Rules of Civil Procedure, the Illinois Code of Civil Procedure makes predominance a requirement for all class actions. Compare Fed. R. Civ. P. 23(a)(3) and 23(b)(3) with 735 ILCS 5/2-801(2).

Contrary to defendants' contention, the Seventh Circuit's *Bridgestone II* decision is not

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 45344 Page 5 of 15

Case 1:08-cv-01091 Document 26-4 Filed 07/11/2008 Page 6 of 16

controlling as to the present case, nor is collateral estoppel [10] otherwise applicable. In *Bridgestone,* the United States District Court for the Southern District of Indiana had certified a nationwide class for a products liability case involving allegedly defective tires. In an initial interlocutory appeal, the Seventh Circuit held that certification of a nationwide class was improper because the laws of various states would apply to the products liability claims, thereby making a single nationwide class unmanageable. *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1018 (7th Cir. 2002), *cert. denied,* 537 U.S. 1105, 123 S. Ct. 870, 154 L. Ed. 2d 774 (2003). The court also indicated that it would be improper to certify multiple subclasses based on where the accident occurred. *See id.* at 1018-20. The district [*12] court's certification order, which involved two classes, was reversed. *Id.* at 1021.

**FOOTNOTES**

[10] Collateral estoppel is also known as issue preclusion. This opinion will use the term collateral estoppel since that is the term generally used by the parties in this case.

Thereafter, plaintiffs pursued numerous class actions in various states and at least one state court certified a nationwide class. Defendants moved the Southern District of Indiana to enjoin plaintiffs in the other cases from pursuing any class action whatsoever. The Southern District of Indiana denied the motion for an injunction. *See Bridgestone II,* 333 F.3d at 765. In a second appeal, the Seventh Circuit held that collateral estoppel based on the federal court denial of class certification would have a limited preclusive effect on class certification motions brought in other courts by putative members of the classes that were not certified in the federal action and that the Anti-Injunction Act, 28 U.S.C. § 2283, did not bar the requested injunctive relief. *Bridgestone II,* 333 F.3d at 766-69. In determining the preclusive effect of the denial of class certification, the Seventh Circuit applied federal law regarding the preclusive [*13] effect of a federal court ruling. *See id.* at 767. Under federal law, the Seventh Circuit held that preclusion must be based on a "final judgment," but that finality is broadly defined for purposes of collateral estoppel. A "'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded a conclusive effect." *Id.* (quoting *Restatement (Second) of Judgments* § 13 (1980)). The Seventh Circuit held that a class certification ruling that has been addressed in an interlocutory appeal and for which *certiorari* has been denied is "sufficiently firm." *Bridgestone II,* 333 F.3d at 767. The Seventh Circuit also held that, under federal collateral estoppel law, a denial of class certification may have a preclusive effect as to putative class members so long as counsel for the proposed class provided adequate representation regarding class certification issues. *See id.* at 768-69. The Seventh Circuit held that the collateral estoppel effect of the denial of class certification in *Bridgestone* was limited to precluding certification of a nationwide class in subsequent cases brought by putative class members; it did not preclude certifying [*14] a class limited to a single state. *Bridgestone II,* 333 F.3d at 769. *See also Oshana v. Coca-Cola Bottling Co.,* 225 F.R.D. 575, 579 (N.D. Ill. 2005).

Defendants characterize *Bridgestone II* as being a special rule prohibiting successive motions for class certification, even by different named plaintiffs. However, no such broad rule is stated. *See Carnegie v. Household International, Inc.,* 376 F.3d 656, 663 (7th Cir. 2004), *cert. denied,* 543 U.S. 1051, 125 S. Ct. 877, 160 L. Ed. 2d 772 (2005); *Oshana,* 225 F.R.D. at 579. Instead, *Bridgestone II* is a particularized application of federal collateral estoppel rules in the situation where class certification has previously been denied. *See Carnegie,* 376 F.3d at 662-63; *Bridgestone II,* 333 F.3d at 767-69. Thus, there is no basis for making separate arguments based on both *Bridgestone II* and collateral estoppel. The issue to consider is whether the collateral estoppel effect of the *Finnigan* Order precludes success on the § 216(b) collective action motion brought by plaintiffs in the present case. *Bridgestone II* is not controlling on that issue because *Bridgestone II* involved the preclusive effect of a

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 45344    Page 7 of 16    Page 6 of 15

Case 1:08-cv-01091    Document 28-4    Filed 07/11/2008    Page 7 of 16

federal judgment. *See Bridgestone II,* 333 F.3d at 767. Since defendants presently [*15] invoke collateral estoppel based on a ruling in a state court case, Illinois law as to collateral estoppel must be applied. 28 U.S.C. § 1738; *San Remo Hotel, L.P. v. City & County of San Francisco, Cal.,* 545 U.S. 323, 125 S. Ct. 2491, 2500, 162 L. Ed. 2d 315 (2005); *Heck v. Humphrey,* 512 U.S. 477, 480 n.2, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994); *American National Bank & Trust Co. of Chicago v. Regional Transportation Authority,* 125 F.3d 420, 430 (7th Cir. 1997).

"Collateral estoppel is an equitable doctrine and its application is governed by certain general principles. [The Illinois Supreme Court] has repeatedly held that the minimum threshold requirements for the application of collateral estoppel are: (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Gumma v. White,* 216 Ill. 2d 23, 833 N.E.2d 834, 843, 295 Ill. Dec. 628 (2005). Additionally,

> a prior judgment operates as an estoppel only regarding issues "*actually litigated and determined* and not as to other matters which might have been litigated and determined." (Emphasis [*16] in original.) *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.,* 189 Ill. App. 3d 638, 661, 545 N.E.2d 481, 496, 136 Ill. Dec. 957 (1989). Moreover, the party against whom the estoppel is asserted must have had a full and fair opportunity to litigate the issue in the earlier action, and "an injustice must not be done to him under the circumstances of the later case." *Stone v. Salvage & Bridges Agency, Inc.,* 206 Ill. App. 3d 615, 620, 565 N.E.2d 318, 321, 152 Ill. Dec. 76 (1990); *Wolford v. Owens-Corning Fiberglas Corp.,* 176 Ill. App. 3d 312, 314, 530 N.E.2d 721, 722, 125 Ill. Dec. 563 (1988).

*Hayes v. State Teacher Certification Board,* 359 Ill. App. 3d 1153, 835 N.E.2d 146, 155, 296 Ill. Dec. 291 (5th Dist. 2005), *appeal denied,* 217 Ill. 2d 562, 844 N.E.2d 37, 300 Ill. Dec. 365 (Dec. 1, 2005)

Illinois law differs from federal law regarding the "final judgment" requirement for applying collateral estoppel. Illinois cases hold that this requirement is not satisfied until the potential for appellate review has been exhausted. *Ballweg v. City of Springfield,* 114 Ill. 2d 107, 499 N.E.2d 1373, 1375, 102 Ill. Dec. 360 (1986); *People v. Luedemann,* 357 Ill. App. 3d 411, 828 N.E.2d 355, 369, 293 Ill. Dec. 385 (2d Dist. 2005), *appeal allowed,* 216 Ill. 2d 713, 839 N.E.2d 1032, 298 Ill. Dec. 385 (Sept. 29, 2005); *People v. Powell,* 349 Ill. App. 3d 906, 812 N.E.2d 636, 639-40, 285 Ill. Dec. 816 (2d Dist. 2004); [*17] *Terry v. Watts Copy Systems, Inc.,* 329 Ill. App. 3d 382, 768 N.E.2d 789, 798, 263 Ill. Dec. 708 (4th Dist. 2002); *People v. One 1984 Pontiac Parisienne Sedan,* 323 Ill. App. 3d 717, 754 N.E.2d 358, 362, 257 Ill. Dec. 700 (2d Dist. 2001); *Luckett v. Human Rights Commission,* 210 Ill. App. 3d 169, 569 N.E.2d 6, 10, 155 Ill. Dec. 6 (1st Dist. 1989), *appeal denied,* 141 Ill. 2d 543, 580 N.E.2d 117, 162 Ill. Dec. 491 (1991), *cert. denied,* 502 U.S. 1113, 112 S. Ct. 1220, 117 L. Ed. 2d 456 (1992). *See also Beckett v. H&R Block, Inc.,* 306 Ill. App. 3d 381, 714 N.E.2d 1033, 1038, 239 Ill. Dec. 736 (1st Dist. 1999). [11] Ten years ago, the Seventh Circuit questioned whether *Ballweg* and its progeny (some of which had extended *Ballweg*'s holding to *res judicata* (claim preclusion)) is controlling Illinois precedent because *Ballweg* is inconsistent with the rule applied in most jurisdictions and also inconsistent with a 1948 Illinois Supreme Court *res judicata* case. *See Rogers v. Desiderio,* 58 F.3d 299, 301-02 (7th Cir. 1995); *State Life Insurance Co. v. Board of Education of Chicago,* 401 Ill. 252, 81 N.E.2d 877 (1948). *See also Illinois Founders Insurance Co. v. Guidish,* 248 Ill. App. 3d 116, 618 N.E.2d 436, 440, 187 Ill. Dec. 845 (1st Dist. 1993); *Shaw v. Citizens State Bank of Shipman,* 185 Ill. App. 3d 79, 540 N.E.2d 1132, 1134, 133 Ill. Dec. 266 (4th Dist. 1989). [*18] *State Life* holds that a decision based on *res judicata* will not be overturned when the prior case upon which *res judicata* was based is vacated on appeal or otherwise, thus implicitly holding that the possibility or

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 45244 Page 7 of 15

Case 1:08-cv-01091 Document 28-4 Filed 07/11/2008 Page 8 of 16

pendency of an appeal does not prevent a judgment from having a res judicata effect. *Illinois Founders* and *Shaw* cite to *State Life* in holding that, where res judicata would otherwise apply and the prior decision is on appeal, the latter case generally should be stayed until the appeal is resolved so as to prevent the inconsistency that occurred in *State Life*. In *Rogers,* a state court case that would have a res judicata effect was pending in the Illinois Appellate Court. The Seventh Circuit stated that, it could not be determined whether, under Illinois law, a pending appeal destroys the res judicata effect of a Illinois state court judgment. In light of *State Life,* though, the Seventh Circuit held that the federal district court should stay its proceeding until the state court appeal was resolved.

### FOOTNOTES

11 In *Beckett,* collateral estoppel was based on a federal judgment for which all appeals had already been exhausted. However, in *dictum,* the court cited *Ballweg* in stating: "The [*19] decision is final, in that the potential for appellate review has been exhausted." *Beckett,* 714 N.E.2d at 1038.

The present situation is distinguishable from *Rogers*. In the ten years following *Rogers,* two of Illinois's Appellate Court Districts have continued to follow *Ballweg,* one Appellate Court District has favorably cited it in *dictum,* and no published Illinois court decision has followed *State Life* nor questioned *Ballweg*. Also, no published Illinois court decision has cited the discussion in *Rogers*. Moreover, *Rogers* involved res judicata and, as noted in *Rogers,* some Illinois Appellate Court cases had followed *State Life* in res judicata cases while others had extended *Ballweg* to res judicata. The collateral estoppel cases, however, have consistently followed *Ballweg*. Further, this is not a situation where a judgment has been entered in the trial court and that judgment is on appeal. The *Finnigan* case is still pending in the Circuit Court of Cook County with no judgment having yet been entered so the denial of class certification has not even become appealable yet. *See* Ill. S. Ct. R. 303, 307. Illinois case law supports that a ruling in a case that has not yet become appealable [*20] is not a final judgment that can be a basis for applying collateral estoppel in another case. *1984 Pontiac Parisienne,* 754 N.E.2d at 362. The *Finnigan* Order is not yet a ruling upon which collateral estoppel may be based. Therefore, the request to send opt-in notices must be considered on its merits.

Even if the *Finnigan* Order should be considered a final judgment that can support collateral estoppel, it would not preclude pursuit of plaintiffs' collective action motion. Any collateral estoppel effect of the *Finnigan* Order would be limited to the issues actually litigated and rulings that were necessary and essential to that Order. *People v. Jones,* 207 Ill. 2d 122, 797 N.E.2d 640, 649, 278 Ill. Dec. 45 (2003); *Hayes,* 835 N.E.2d at 155; *Terry,* 768 N.E.2d at 796. The only issue actually decided by the state court was that class certification under Illinois Civil Procedure Rule 2-801 was not appropriate because common class questions did not predominate. There was no finding that common questions did not exist, only a finding that the common questions did not predominate. *Finnigan* Order at 4-6. Predominance of common questions is not a requirement for a § 216(b) collective action. *Grayson,* 79 F.3d at 1096; [*21] *Flavel,* 875 F. Supp. at 553. 12 At most, whether individual questions will predominate is one factor to weigh and balance with others in determining whether the plaintiffs who have joined in a § 216(b) collective action are similarly situated. *See, e.g., Thiessen v. General Electric Capital Corp.,* 267 F.3d 1095, 1103-05 (10th Cir. 2001), *cert. denied,* 536 U.S. 934, 122 S. Ct. 2614, 153 L. Ed. 2d 799 (2002).

### FOOTNOTES

12 Some courts have applied the predominance requirement of Fed. R. Civ. 23(b)(3) to a § 216(b) collective action. *See, e.g., Bayles v. American Medical Response of Colorado,*

*Inc.*, 950 F. Supp. 1053, 1060-61 (D. Colo. 1996) (cited by defendants). As was set forth above, the Seventh Circuit has held that Rule 23 does not apply to a § 216(b) collective action. *King,* 960 F.2d at 621; *Woods,* 686 F.2d at 579-80.

In arguing that the issues are identical in both the present case and the *Finnigan* case, defendants mistakenly rely on *res judicata* cases. *See* Def. Answer Br. at 9 (citing *Canady v. Allstate Insurance Co.*, 282 F.3d 1005, 1015 (8th Cir. 2002); *NAACP, Minneapolis Branch v. Metropolitan Council,* 125 F.3d 1171, 1174 (8th Cir. 1997), *vacated & remanded,* 522 U.S. 1145, 118 S. Ct. 1162, 140 L. Ed. 2d 173, *prior opinion reinstated,* 144 F.3d 1168 (8th Cir.), [*22] *cert. denied,* 525 U.S. 826, 119 S. Ct. 73, 142 L. Ed. 2d 57 (1998)); Def. Sur-Reply Br. at 6 (same). Under Illinois and federal law (which defendants cite), *res judicata* is broader than collateral estoppel in that there need only be identical causes of action, not identical factual or legal issues. *See Benton v. Smith,* 157 Ill. App. 3d 847, 510 N.E.2d 952, 954, 109 Ill. Dec. 884 (1st Dist. 1987); *Lester v. Arlington Heights Federal Savings & Loan Association,* 130 Ill. App. 3d 233, 474 N.E.2d 33, 37, 85 Ill. Dec. 619 (2d Dist. 1985); *Hanna v. City of Chicago,* 2003 U.S. Dist. LEXIS 14888, 2003 WL 22024987 *2 (N.D. Ill. Aug. 27, 2003); *Perry v. Sheahan,* 222 F.3d 309, 318 (7th Cir. 2000) (quoting *Okoro v. Bohman,* 164 F.3d 1059, 1063 (7th Cir. 1999)). Also, defendants ignore that a collateral estoppel case which they cited in their answer brief limits its application to the specific factual issues decided in the prior case, that Rule 23 class certification was not appropriate because the named plaintiff purchased his stock outside the appropriate time period, he was not an adequate representative, and he did not satisfy typicality. *See In re Keck, Mahin & Cate,* 237 B.R. 430, 434-35 (Bankr. N.D. Ill. 1999), *aff'd,* 253 B.R. 530, 533 (N.D. Ill. 2000). Similarly, other cases cited in defendants' [*23] Sur-Reply at 6 apply collateral estoppel based on specific findings in the prior case that negated elements necessary to claims in the later case. *See Teamsters Local 282 Pension Trust Fund v. Angelos,* 762 F.2d 522, 531-32 (7th Cir. 1985); *Wozniak v. DuPage County,* 845 F.2d 677, 683 (7th Cir. 1988). In their sur-reply, defendants also cite *dictum* in *Lee v. Criterion Insurance Co.,* 659 F. Supp. 813, 822-23 (S.D. Ga. 1987). [13] *Lee* is distinguishable in that it involved denials of class certification under Georgia and federal civil rules that were not materially different. *Id.* at 822. Here, § 216(b) and R 2-801 involve different prerequisites for the application of each. Also, other cases hold that the application of collateral estoppel based on a prior denial of class certification must be limited to the actual basis for denying class certification. *See, e.g., Nagel v. ADM Investor Services, Inc.,* 1999 WL 1212853 *3 (Ill. Cir. Ct. Dec. 16, 1999); *Bridgestone II,* 333 F.3d at 769; *Oshana,* 225 F.R.D. at 579; *Keck,* 237 B.R. at 433. Moreover, Illinois law is clear that collateral estoppel must be limited to the particular issue that was actually determined in the prior case. *Jones,* 797 N.E.2d at 649; [*24] *Hayes,* 835 N.E.2d at 155; *Terry,* 768 N.E.2d at 796.

**FOOTNOTES**

13 "[T]he Court's ruling with respect to defendant's second argument renders moot the question whether sanctions should be imposed on plaintiff's counsel for his inclusion of class action allegations." *Lee,* 659 F. Supp. at 822.

In any event, as previously discussed, there is no final judgment upon which collateral estoppel may be based. Therefore, any fact related to permitting a § 216(b) collective action, including predominance or commonality of issues, must be considered *de novo.*

Courts have adopted a two-step procedure for § 216(b) cases. As previously set forth, the initial step in permitting a collective action is to decide whether to issue an opt-in notice based on whether the plaintiffs can make a modest factual showing of being similarly situated. After discovery has been completed, the issue of permitting the collective action to

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 45344    Page 10 of 16    Page 9 of 15

Case 1:08-cv-01091    Document 28-4    Filed 07/11/2008

continue may be raised by defendants at which point it will be considered whether the plaintiffs who have joined in the case at that point are all similarly situated. At the second stage, the issue will be decided on a more complete factual record and the burden placed on the plaintiffs will no longer **[*25]** be limited to a modest showing. See *Thiessen,* 267 F.3d at 1102-03; *Flores,* 289 F. Supp. 2d at 1045 (quoting *Belbis v. County of Cook,* 2002 U.S. Dist. LEXIS 22426, 2002 WL 31600048 *4 (N.D. Ill. Nov. 18, 2002)); *Infantino,* 2005 U.S. Dist. LEXIS 14391, 2005 WL 3132362 at *1; *Veerkamp,* 2005 U.S. Dist. LEXIS 5835, 2005 WL 775931 at *2. Defendants contend that this court should proceed directly to the second step because, in *Finnigan,* extensive discovery was taken on the class certification issue, including depositions of a number of plaintiffs in the present case, and the *Finnigan* discovery is already available to both sides in the present case. While the availability of that discovery provides some support for defendants' position, other factors counsel against leaping directly to the second step. The discovery in *Finnigan* apparently was directed to the class certification issue only. Therefore, the parties do not yet have all the evidence that would be available at the conclusion of discovery in the present case. More importantly, it is not yet known who else may attempt to join this lawsuit. It may be that few others choose to opt in. Or it may turn out that it will be appropriate to continue with some, but not all, of the additional plaintiffs that opt in. Or it may **[*26]** turn out that it is appropriate to have subclasses of plaintiffs or a few separate law suits. None of that can be known at this time. Any second-step determination is best made in light of who is actually in the case. See *Rochlin v. Cincinnati Insurance Co.,* 2003 U.S. Dist. LEXIS 13759, 2003 WL 21852341 *16 (S.D. Ind. July 8, 2003). The "modest" factual showing standard will still be applied, but it will be applied in light of the record that is before the court on the pending motion. Thus, plaintiffs must at least "modestly" overcome any contrary evidence submitted by defendants.

To proceed on a § 216(b) collective action, there must be similarly situated employees, which usually includes being subjected to a common policy. This standard has been held to be less stringent than that required for joinder of parties under Fed. R. Civ. P. 20(a) ("any right to relief . . . in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action"). *Grayson,* 79 F.3d at 1096; *Hipp v. Liberty National Life Insurance Co.,* 252 F.3d 1208, 1219 (11th Cir. 2001), *cert. denied,* 534 U.S. 1127, 122 S. Ct. 1064, 151 L. Ed. 2d 968 (2002); *Mahaffey v. Amoco Corp.,* 1997 U.S. Dist. LEXIS 680, 1997 WL 24712 *1 (N.D. Ill. Jan. 17, 1997); **[*27]** *Flavel,* 875 F. Supp. at 553. There must be a demonstrated similarity among the situations of each plaintiff beyond simply claiming that the FLSA has been violated; an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws generally must be present. *Garza,* 2001 U.S. Dist. LEXIS 6132, 2001 WL 503036 at *2; *Mahaffey,* 1997 U.S. Dist. LEXIS 680, 1997 WL 24712 at *1 (quoting *Heagney v European American Bank,* 122 F.R.D. 125, 127 (E.D.N.Y. 1988)); *Sheffield v. Orius Corp.,* 211 F.R.D. 411, 416 (D. Or. 2002). A *unified* policy, plan, or scheme, though, is not necessarily required to satisfy the similarly situated requirement, especially if a collective action would promote judicial economy because there is otherwise an identifiable factual or legal nexus. See *Grayson,* 79 F.3d at 1095; *Hipp,* 252 F.3d at 1219; *Mielke v. Laidlaw Transit, Inc.,* 313 F. Supp. 2d 759, 763 (N.D. Ill. 2004); *Sheffield,* 211 F.R.D. at 416; *Reed v. Mobile County School System,* 246 F. Supp. 2d 1227, 1234 n.11 (S.D. Ala. 2003); *Marsh v. Butler County School System,* 242 F. Supp. 2d 1086, 1092-93 (M.D. Ala. 2003). It should also be recognized that § 216(b) applies to statutory claims other than FLSA claims. Section 216(b) **[*28]** also applies to discrimination cases under the Age Discrimination in Employment Act ("ADEA"), see 29 U.S.C. § 626(b), and Equal Pay Act, see 29 U.S.C. § 206(d); *Lifrak v. New York City Council,* 389 F. Supp. 2d 500, 503 (S.D.N.Y. 2005). Many of the reported cases involving collective actions pursuant to § 216(b), including many of the cases cited herein, are ADEA cases. Whether a defendant was motivated by a discriminatory animus, as is generally required for an age discrimination claim, is often an individualized, fact-intensive inquiry. An FLSA claim generally will not involve the same sort of issues as to a defendant's mental state as does an ADEA claim and therefore an FLSA case would be more likely to be amenable to a collective procedure than an ADEA case. In an

ADEA case, whether there is a common practice or policy may be particularly important because it may take certain individualized motivation issues out of the case. *See, e.g., Thiessen,* 267 F.3d at 1105-08 (in decertifying an ADEA collective action, the district court failed to take into account that plaintiffs were pursuing a pattern-or-practice claim that alters the burdens on the parties).

Factors that may be considered **[*29]** in determining whether plaintiffs are similarly situated include: (a) similarities and differences in the employment and other factual settings of the various plaintiffs, including whether plaintiffs had differing job titles or assignments, worked in different locations, were under different supervisors or decisionmakers, or allege different types of violative conduct; (b) the extent to which the plaintiffs will rely on common evidence; (c) defenses available to defendants and whether the defenses are individual to each plaintiff; and (d) fairness and procedural considerations, including whether a trial may be coherently managed in a way that will not confuse the jury or unduly prejudice a party. *See Thiessen,* 267 F.3d at 1103; *Mielke,* 313 F. Supp. 2d at 762; *Koren v. SUPERVALU, Inc.,* 2003 U.S. Dist. LEXIS 4104, 2003 WL 1572002 *16 (D. Minn. March 14, 2003); *Reed,* 246 F. Supp. 2d at 1232 (quoting *Stone v. First Union Corp.,* 203 F.R.D. 532, 542-43 (S.D. Fla. 2001)); *Wynn v. National Broadcasting Co.,* 234 F. Supp. 2d 1067, 1083-84 (C.D. Cal. 2002). 14

**FOOTNOTES**

14 Although some courts refer to these factors as being pertinent to the analysis applied at the second-step, there is no good reason to distinguish between the factors **[*30]** that may be considered at the first and second step. The primary difference between the two stages of the litigation is the level of proof required. Also, at the first step, information about particular factors may not be available at all or may not be very well developed.

Plaintiffs present evidence to support the following. AIU admissions advisors call prospective students and solicit them to enroll at AIU. Admissions advisors had sales goals they were to meet. Based on his experience, defendant Fireng estimates that it takes an average of 100 dialed calls plus a certain number of follow ups to enroll one student. Taking Fireng's estimates as accurate, it would take more than a 40-hour week to meet the goals. Plaintiffs point to the deposition testimony or affidavits of nine admissions advisors who state that they were told not to report overtime on their timesheets, including being required to change timesheets to remove reported overtime. Additional admissions advisors state they were not compensated for overtime. One plaintiff testified that both her supervisor and Fireng instructed her that, if she could not complete her work in eight hours, she should work longer, but would not **[*31]** be paid overtime. Plaintiffs also present evidence that complaints were made to a number of management employees regarding unpaid overtime, including a management internal email acknowledging such reports.

Defendants contend that AIU has a written policy requiring that employees accurately report their time and that they will be paid for overtime that they work. 15 They contend that any contrary instruction from individual supervisors would have to be proven on an individualized basis and be based on anecdotal evidence. Defendants contend that different team supervisors acted differently regarding overtime, that different employees interpreted supervisory statements concerning possible overtime differently, and that some admissions supervisors reported and were paid overtime. Defendants, however, provide little support for these contentions. In two briefs, *see* Def. Answer Br. at 14-17; Def. Sur-Reply at 13-15, the only actual support that defendants cite for these propositions is the deposition of plaintiff Gary Severs at 252 and 260-61. As of his August 16, 2004 deposition, which was almost a year after the *Finnigan* and *Skelton* cases were filed, Severs testified that the current policy

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 45344 Page 11 of 15

Case 1:08-cv-01091 Document 28-4 Filed 07/11/2008 Page 12 of 16

[*32] was that his supervisor did not explicitly tell him to record all overtime, but implied that he should. He also testified that he still did not record all his overtime in that he would round down. Plaintiffs provide other portions of Severs' deposition regarding prior experiences with not being paid overtime.

**FOOTNOTES**

15 No proper support is provided for this assertion. In their Answer Brief at 14, defendants cite to their Exhibits H and J, which are briefs filed in the *Finnigan* case, and do not cite to specific pages of those briefs. Defendants were granted leave to file an oversized answer brief. It is improper to further extend the size of a brief by wholly incorporating other briefs. See *Albrechtsen v. Board of Regents of University of Wisconsin System,* 309 F.3d 433, 436 (7th Cir. 2002), *cert. denied,* 539 U.S. 941, 123 S. Ct. 2606, 156 L. Ed. 2d 626 (2003); *Fleming v. Kane County,* 855 F.2d 496, 498 (7th Cir. 1988). Also, the court cannot be expected to search through two entire briefs to find a citation supporting the fact that is being stated. Even when defendants cite to specific pages of the *Finnigan* briefs, *see, e.g.,* Def. Sur-Reply at 13, they cannot simply rely on factual assertions made in the other briefs. To the extent [*33] the other briefs have citations to the record, the citations are often simply to the exhibits submitted in *Finnigan* which had different labels than the exhibits filed with the present motions. A citation to paragraphs of "Exhibit A" in the *Finnigan* case means nothing in the present case. *See, e.g.,* Def. Sur-Reply at 13 (citing present Exh. H at 7, which cites *Finnigan* Exh. A, J, K, & X).

Whether employees were told they should or should not report overtime does not go to the issue of defendants' liability for the overtime itself, although those facts may be relevant to the additional claim that the failure to pay overtime was willful. Even if an employee is not instructed to work overtime, the employer will be liable to pay overtime if the employer knew or should have known that the employee was actually working additional hours. See *Ladegaard v. Hard Rock Concrete Cutters, Inc.,* 2004 U.S. Dist. LEXIS 16288, 2004 WL 1882449 *4 (N.D. Ill. Aug. 18, 2004); *O'Brien v. Encotech Construction,* 2004 U.S. Dist. LEXIS 4696, 2004 WL 609798 *5-6 (N.D. Ill. March 23, 2004). Such knowledge on the part of direct supervisors or other management employees will be imputed to the employer. *Id.* Defendants do not contend that direct supervisors were unaware of [*34] the work being performed and plaintiffs present evidence that management officials were made aware of unpaid overtime.

In any event, plaintiffs present evidence supporting the existence of a widespread policy of admissions advisors working uncompensated overtime, as well as evidence that management officials, including Fireng, were aware of it. Although, defendants contend that the policy widely varied from team-to-team, they do not provide any substantial evidence to support that contention. The claims of all plaintiffs would be based on the simple theory that they worked hours for which they were not compensated. The employees that would be joined in this action all had the same job title and duties, and would be limited to those working at two locations in suburban Chicago. Notice would only go to admissions advisors whose employment overlapped with those already in the lawsuit, that is, those who worked as admissions advisors at some time between August 24, 2002 [16] and November 1, 2004. [17] Even if some variations exist among plaintiffs that would require dividing the plaintiffs into subclasses, it would presently appear that judicial economy would still favor keeping the plaintiffs [*35] in a single case. At this stage of the litigation, all plaintiffs appear to be similarly situated.

**FOOTNOTES**

16 The beginning date is limited by the statute of limitations.

17 This likely will include employees who also worked after November 1, 2004 and who may still be employees of AIU. Any such employees who join in the lawsuit would not be precluded from seeking relief for any unpaid overtime worked after November 1, 2004.

Plaintiffs will be permitted to proceed on a collective action and a notice will be sent to potential opt-ins. Within 14 days, defendants shall provide plaintiffs with a list of names and addresses of all admissions advisors employed by AIU at its Hoffman Estates and Downers Grove locations from August 24, 2002 to and including November 1, 2004. Notice, substantially in the form appended hereto, shall be mailed out by no later than January 31, 2006.

IT IS THEREFORE ORDERED that plaintiffs' motion to send FLSA notice [5]. Within 14 days, defendants shall provide plaintiffs with a list of names and addresses of admissions advisors employed by AIU from August 24, 2002 to and including November 1, 2004. By January 31, 2006, plaintiffs shall mail out notice substantially in the form **[*36]** appended to today's memorandum opinion and order. All discovery is to be completed by June 16, 2006. A status hearing will be held on April 19, 2006 at 11:00 a.m.

William T. Hart

UNITED STATES DISTRICT JUDGE

DATED: DECEMBER 22, 2005

APPENDIX

***IMPORTANT NOTICE OF YOUR RIGHT TO JOIN AS A PLAINTIFF IN A LAWSUIT SEEKING TO RECOVER OVERTIME WAGES UNDER THE FAIR LABOR STANDARDS ACT***

**TO:** Present and Former Employees of **American Intercontinental University Online ("AIU")** Who Have Worked As An Admissions Advisor At Any Time From August 24, 2002 To November 1, 2004 Inclusive at AIU's Hoffman Estates and Downers Grove locations.

**1. INTRODUCTION**

*The purpose of this Notice is to inform you of the existence of a collective action lawsuit, in which you may join as a plaintiff, to advise you of how your rights may be affected by this suit, and to instruct you on the procedure for joining in this lawsuit should you choose to do so.*

**2. DESCRIPTION OF THE LAWSUIT**

*Plaintiffs Paul Vander Vennet, Patrick Bracey, Lori Estell, Lori Langer, Randy Myers, Gary Severs, Eric Skarpac, John Tamel, Karin Oddsen-Taylor, Michael Thrasher, and Angela White, were formerly employed by AIU as admissions advisors. They have brought* **[*37]** *this lawsuit against Defendants AIU, Career Education Corporation, and Steve Fireng, on behalf of themselves and other past and present admissions advisors of AIU who have not been paid overtime wages for hours worked in excess of forty (40) hours a week.*

*The Fair Labor Standards Act requires that employees be paid one and one-half times their regular hourly wage for all work over 40 hours in any workweek.*

*Plaintiffs claim that Defendants failed to pay them overtime, and further claim that the actions of Defendants were willful. Plaintiffs also seek an additional equal amount as liquidated damages and/or prejudgment interest, attorney fees, and costs. No trial date has yet been set in this case.*

**3. WHO MAY JOIN THE LAWSUIT**

*If you are a current or former employee of AIU who worked as an admissions advisor, and you believe that, some time on or after August 24, 2002, you were denied overtime pay despite working more than 40 hours in a week, you have a right to join this lawsuit.*

**4. YOUR RIGHT TO PARTICIPATE IN THIS LAWSUIT**

*If you believe that you were denied overtime pay, you may join this suit (that is, you may "opt in" to the lawsuit) by mailing or delivering the Consent To Become Party [\*38] Plaintiff form (the blue form attached to this Notice) to Plaintiffs' attorney at the following address:*

AIU/CEC OVERTIME LITIGATION

c/o Robin Potter & Associates, P.C.

111 East Wacker Drive, Suite 2600

Chicago, Illinois 60601

312/419-1008 (phone)

312/861-3009 (fax)

Your completed and signed Consent form should be sent to the above address in sufficient time to have Plaintiffs' attorney file it with the federal court on or before April 14, 2006. If you fail to return the Consent form to plaintiffs' counsel in time for it to be filed with the federal court on or before that deadline, you may not be able to participate in this lawsuit. That means you bear the risk of any non-delivery or delay in delivery of the Consent form.

If you file a Consent form, your continued right to participate in this lawsuit may depend upon a later decision by the District Court that you and other Plaintiffs are actually "similarly situated" in accordance with federal law.

**5. EFFECT OF JOINING THIS SUIT**

*If you choose to join in the suit, you will become a Party Plaintiff in this case. You will be required to participate in discovery proceedings, including providing information and appearing for a deposition if such [\*39] is requested of you. You may also be required to appear and testify at the trial of this case. In any event, if you choose to join this lawsuit, you will be bound by any judgment entered in the case, whether it is favorable or unfavorable.*

**6. IF YOU CHOOSE NOT TO JOIN THIS SUIT**

*If you choose not to join this suit, you will not be affected by any judgment or settlement rendered in this case, whether favorable or unfavorable to the class. If you choose not to join in this lawsuit, you are free to file your own lawsuit.*

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 45344    Page 14 of 15

Case 1:08-cv-01091    Document 28-4    Filed 07/11/2008    Page 15 of 16

**7. *NO RETALIATION AGAINST YOU IS PERMITTED***

*Federal law prohibits Defendants from discharging you from employment or taking any other adverse employment action against you because you have exercised your legal right to join this lawsuit or because you have exercised your rights under the Fair Labor Standards Act.*

**8. *YOUR LEGAL REPRESENTATION IF YOU JOIN***

*Plaintiffs' attorney, Robin Potter, will represent you should you elect to join this lawsuit. Your attorney may be entitled to receive the payment of attorney fees and costs from Defendants should there be a recovery or judgment in your favor. If there is no recovery or judgment in your favor, you will not be responsible for any* **[*40]** *attorney fees, but you may be responsible for certain costs of litigation.*

**9. *FURTHER INFORMATION***

*Further information about this Notice, or the deadline for filing a Consent form, or other questions about this lawsuit may be obtained by writing or telephoning Plaintiffs' attorney at the number and address stated above. Further information about this lawsuit may also be obtained by reviewing the court file in the Clerk's Office, 20th Floor, 219 South Dearborn Street, Chicago, Illinois.*

**THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS. THE FEDERAL DISTRICT COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF PLAINTIFFS' CLAIMS OR OF DEFENDANTS' DEFENSES. PLEASE DO NOT CALL OR WRITE THE COURT OR THE CLERK OF THE COURT. THEY CANNOT ANSWER QUESTIONS CONCERNING THIS LAWSUIT OR THIS NOTICE.**

**NOTICE OF CONSENT TO BECOME A PARTY PLAINTIFF IN A COLLECTIVE ACTION UNDER THE FAIR LABOR STANDARDS ACT**

By my signature below I represent to the court that I have been employed by American Intercontinental University Online as an admissions advisor at anytime between August 24, 2002 and November 1, 2004 inclusive, and that **[*41]** I have worked in excess of forty (40) hours in individual workweeks, and that I believe I have not been paid all overtime wages owed to me. I authorize through this Consent the prosecution of this lawsuit in my name and on behalf of similarly-situated persons.

My name is:     (print your name)

My address is:     (street address)

    (city, state, zip code)

My telephone number is:

My signature:

Date:

**MAIL TO:**

AIU/CEC OVERTIME LITIGATION

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 45344    Page 15 of 15

Case 1:08-cv-01091    Document 28-4    Filed 07/11/2008    Page 16 of 16

c/o Robin Potter & Associates, P.C.

111 East Wacker Drive, Suite 2600

Chicago, Illinois 60601

312/419-1008 (phone)

312/861-3009 (fax)

    Service: **Get by LEXSEE®**
   Citation: **2005 U.S. Dist. LEXIS 45344**
      View: Full
Date/Time: Friday, July 11, 2008 - 9:23 AM EDT

\* Signal Legend:
- ● - Warning: Negative treatment is indicated
- [Q] - Questioned: Validity questioned by citing refs
- △ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- ⓐ - Citing Refs. With Analysis Available
- ⓘ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.


About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.