IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DENEENE D. ERVIN, ELIZABETH L. DYE and DAWN HARDY, on behalf of themselves and all other persons similarly situated, known and unknown,<br><br>Plaintiffs,<br><br>v.<br><br>OS RESTAURANT SERVICES, INC., d/b/a OUTBACK STEAKHOUSE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 08 C 1091<br>)<br>)   Judge Guzman<br>)<br>)<br>)<br>) |

**MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE
COURT'S ORDER BARRING PLAINTIFFS' COUNSEL
FROM COMMUNICATING WITH THE PUTATIVE CLASS**

I. **INTRODUCTION**

Defendant OS Restaurant Services, Inc., ("Outback"), by and through its attorneys, Jane McFetridge and Nadine Abrahams of Jackson Lewis LLP, hereby submits this memorandum in opposition to Plaintiffs' motion for reconsideration of this Court's July 15th order enjoining Deneene Ervin ("Ervin"), Elizabeth Dye ("Dye"), and Dawn Hardy ("Hardy") (collectively "Plaintiffs"), or anyone acting on behalf of Plaintiffs, from providing notice to, soliciting, or communicating with potential class and collective action members in this litigation prior to reaching an agreeable procedure for such communication with defense counsel, or alternatively, further authorization from this Court (hereafter "July 15 Order").

Outback opposes Plaintiffs' motion on the grounds that this Court's original ruling was correct and entirely consistent with legal precedent. Plaintiffs acted improperly when

they sent notices to potential class members prior to this Court certifying this lawsuit for class or collective action treatment. Because Plaintiffs' communications to potential class members constituted improper notice and solicitation, and because Plaintiffs misrepresented the status of the case to potential class members, this Court was correct to enjoin Plaintiffs' counsel from further communicating with potential class members without first working out an agreeable procedure with defense counsel. Outback therefore respectfully requests that this Court deny Plaintiffs' motion for reconsideration of the Court's July 15 Order.

Although this Court directed the parties to work out a manner of correcting the initial improper communication, Plaintiffs' counsel has been uncooperative and unwilling to compromise. Outback proposes a procedure for communicating with witnesses and potential class members going forward that allows Plaintiffs' counsel legitimate access to potential witnesses, while at the same time undoing the negative effect of the improper notice. Accordingly, Outback respectfully requests that the Court adopt Outback's proposed resolution, or else order the parties to further meet and confer.

## II. **BACKGROUND**

Plaintiffs filed the above-captioned action in this Court on or about February 21, 2008. Plaintiffs bring claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as a purported collective action. Plaintiffs also assert claims under the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.*, and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.*, as a purported class action pursuant to Federal Rule of Civil Procedure 23 ("Rule 23").

Plaintiffs improperly attempted to solicit individuals who are <u>not</u> parties to this action, despite the fact that the Court has not certified this matter as a collective action pursuant

2

to 29 U.S.C. § 216(b) or as a class action pursuant to Rule 23. On July 2, Plaintiffs' counsel sent notices of this litigation to potential plaintiffs representing, prematurely, that this is a class action (hereafter "July 2 Notices"). *See* Exhibit 1. The July 2 Notices specifically stated that "[a] class action lawsuit is proceeding" and further solicit the potential plaintiff by stating "[y]our input will help us develop certain facts for the lawsuit, and help determine whether you may have a claim for owed back wages." *Id.* Plaintiffs' counsel did not seek approval from this Court prior to sending the July 2 Notices, nor did they notify defense counsel of their intention to send these notices.

On July 11, Outback filed a motion for an injunction from this Court barring Plaintiffs from providing notice to, soliciting, or communicating with any potential opt-in plaintiffs, including the July 2 Notice recipients and anyone referred to Plaintiffs' counsel by those recipients, unless and until the Court grants conditional certification of a defined class.

This Court heard oral argument on July 15. The Court ruled in favor of Outback, holding that Plaintiffs' counsel acted improperly in sending notice to potential class members without seeking approval of the Court and without first advising defense counsel. (*See* Exhibit 2, Transcript Of Proceedings Before The Honorable Ronald A. Guzman, 12:20-22). Accordingly, the Court enjoined Plaintiffs' counsel from communicating with putative class members in the improper manner Plaintiffs' counsel previously engaged in, and ordered that Plaintiffs' counsel confer with opposing counsel in order to work out a procedure for contacting potential witnesses and/or class members going forward. The Court further stated that if counsel cannot agree on such a procedure, they may move this Court to approve a suggested mechanism for contacting potential witnesses and/or class members. (Ex. 2 at 14:8-13).

Subsequently, despite the Court's instruction that the parties work out a manner of correcting the initial improper communication, Plaintiffs' counsel has insisted that the only option is for plaintiffs' counsel to send a second letter to the entire group of potential plaintiffs. Despite defense counsel's repeated proposals for compromise and invitations for further discussion, Plaintiffs' counsel have not wavered in their unreasonable proposal, nor attempted to discuss this matter with defense counsel. In a last-ditch effort to circumvent the Court's reasonable restrictions on Plaintiffs' counsels' ability to communication with and solicit potential class members, Plaintiffs brought this motion for reconsideration of this Court's July 15th Order.

### III. ARGUMENT

#### A. Plaintiffs' Motion For Reconsideration Must Be Denied Because This Court's July 15th Order Was Correct And Consistent With Case Law.

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). This Court may deny or grant a motion for reconsideration in its sound discretion. *Id.* at 1270. A motion for reconsideration is not a second bite at the apple, allowing the moving party to raise new legal or factual arguments they could have made before the Court ruled. *Id.* "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Id.*

Here, Plaintiffs have not identified, and cannot identify, any manifest errors in this Court's July 15 Order. Instead, Plaintiffs' motion is an attempt to repeat those arguments previously rejected by this Court at the July 15 hearing. A thorough reading of the hearing transcript demonstrates that the arguments Plaintiffs now bring in their motion for reconsideration were all heard and denied by this Court. (Ex. 2). This Court's original ruling

was correct and entirely consistent with the case law. Plaintiffs' heavy reliance on *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), is misplaced and was rightfully rejected by this Court in its July 15 ruling. There was a strong basis for the Court to act precisely as it did because of the key facts that (a) Plaintiffs went well beyond permissible information gathering and moved into the realm of notice and solicitation, and (b) Plaintiffs misrepresented the status of the case. Plaintiffs cannot ignore their own wrongdoing in this misguided attempt to convince this Court to change its mind. Plaintiffs fail to satisfy the high standard required of a court to grant a motion for reconsideration, and their motion should be denied.

### 1. The Court's July 15th Order Is Proper Under *Gulf Oil Co. v. Bernard.*

In support of their Motion, Plaintiffs rely heavily on the Supreme Court case of *Gulf Oil Co. v. Bernard* to suggest that the Court's July 15 Order was somehow improper. The Court's July 15 Order does not run afoul of the *Gulf Oil* holding. In any event, *Gulf Oil* is distinguishable from the facts here.

*Gulf Oil* does not hold, as Plaintiffs seem to suggest, that the Court may never bar or limit communications between the parties or their counsel and potential class members. *Id.* Rather, the Supreme Court held that any order limiting communication to prospective class members "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101. *Gulf Oil* expressly recognized "the possibility of abuses in class-action litigation" and agreed that these abuses "may implicate[] communication with potential class members." *Id.* at 104. The Supreme Court further recognized that a court may need to limit and control the communications with potential class members. *Id.* at 101-04. What the *Gulf Oil* Court frowned upon was the

"sweeping" action the district court took in that case to completely ban communications with potential class members for apparently no reason at all. *Id.* at 102.[1]

Here, unlike in *Gulf Oil*, the Court had good reason to enter its July 15 Order and to bar Plaintiffs and their counsel from communicating with prospective class members until the harm created by the improperly sent notices could be rectified, either by the parties working it out themselves or through Court involvement. The Court has not in any way run afoul of *Gulf Oil* in light of the clear basis for its July 15 Order – Plaintiffs' improper notices – weighing Plaintiffs' actions with the rights of the parties. In *Gulf Oil*, plaintiff did not send notices to potential class members improperly representing that a "class action" was pending, or soliciting clients, as Plaintiffs did here. Rather, the court in *Gulf Oil* made a sweeping restraint order barring plaintiff's communication with potential class members without any apparent factual analysis or basis for such finding. Here, something completely different happened. Plaintiffs' counsel sent out misleading notices to potential class members in violation of Seventh Circuit requirements that notices should not be sent out prior to conditional certification nor prior to having the notice reviewed by the defendant and, if necessary, approved by the court. *See Woods v. New York Life Insurance Co.*, 686 F.2d 578, 580 (7th Cir. 1982). And then, this Court ruled accordingly.

Moreover, the Supreme Court in *Gulf Oil* cited *Waldo v. Lakeshore*, 433 F. Supp. 782 (E.D. La. 1977), which held that "unapproved communications to class members that misrepresent the status or effect of the pending action also have an obvious potential for

---

[1] Plaintiffs also argue in their Motion that Outback's counsel, Attorney McFetridge, falsely represented to the Court that *Gulf Oil* "was a post-certification case." (Motion at p. 2). This is not true. Attorney McFetridge stated that "Gulf Oil addresses communications with class members." (7/15/08 Tr. at p. 11). Ms. McFetridge never represented to the Court that *Gulf Oil* was a post-certification case. *See id.* Even so, whether *Gulf Oil* is a pre-certification or post-certification case is a red-hearing and is irrelevant. The Court complied with the Supreme Court's holding when it based its July 15 Order on the fact that the Plaintiffs improperly sent misleading notices to putative class members.

6

confusion and/or adversely affecting the administration of justice." Here, the Court's July 15 Order followed the holding of *Gulf Oil* when, on the basis of the unapproved communications to prospective class members that misrepresented the status of the pending action as a "class action," it temporarily barred Plaintiffs and their counsel from communicating with these prospective members until proper safeguards could be put in place.

*Gulf Oil* is also distinguishable as it involved only a Rule 23 class action for race discrimination and did not involve FLSA collective action claims brought pursuant to Rule 213(b), like Plaintiffs' claims here. As such, *Gulf Oil* is not controlling over the clear weight of authority, including Seventh Circuit authority, that prohibits plaintiffs from providing notice to other individuals to join a collective action pursuant to Section 216(b) prior to certification of the collective action by the Court or involvement of the Court and prior to conferring with the defendant on the content of such notice. *See Woods*, 686 F.2d at 580; *Bouder v. Prudential Financial, Inc.*, 2007 U.S. Dist. LEXIS 83338 (D.N.J. Nov. 8, 2007) (ordering plaintiffs and their counsel to cease their attempted communications with the putative class members as plaintiffs' attorneys are not permitted unilaterally to send unsolicited notices regarding the case to putative FLSA class members not yet parties to an action conditionally certified by the Court); *see also Heitmann v. City of Chicago*, 2004 U.S. Dist. LEXIS 14669, *5 (N.D. Ill., July 30, 2004) ("Plaintiff must provide notice to the Defendant prior to distributing notice and consent forms in FLSA actions under 29 U.S.C. § 216(b).").

### 2. The July 2 Notices Constituted Pre-Certification Notice And Are Therefore Improper.

In their motion, Plaintiffs argue that the July 2 Notices sent to potential class members was not "notice" under either the class action procedure of Rule 23 or the collective action procedure under 29 U.S.C. § 216(b). This Court has already flatly rejected this argument.

7

At the July 15 hearing, the court stated, "clearly, if you announce that it's a class action, you are in a way, no matter what you call your communication, <u>sending a notification of class action</u> to these employees." (Ex. 2 at 12:18-20, emphasis added).

Outback has already argued, and this Court agreed, that the July 2 Notices to potential class members constituted "notice." In their motion, Plaintiffs state that the letter "does not solicit consents to join the case," but is rather just a fact-finding mechanism. However, the letter states, "[y]our input will help us develop certain facts for the lawsuit, and **help determine whether you may have a claim**." (Ex. 1, emphasis added). Plaintiffs cannot, in good faith, argue that this letter is not a notice and solicitation. This communication clearly constituted notice prior to certification of a class, and as Plaintiffs concede in their motion, did not provide a balanced recitation of the lawsuit, inform class members of their rights, and explain how those rights can be protected. Accordingly, this Court was entirely correct in its initial determination that Plaintiffs' counsel acted improperly in sending this notice without seeking the Court's approval and advising opposing counsel. (Ex. 2 at 12:20-22).

### 3. Plaintiffs' Characterization To Potential Class Members That This Lawsuit Is A "Class Action" Was Improper.

Plaintiffs also disagree with the Court's determination that their use of the term "class action" in the July 2 Notices was inappropriate. Plaintiffs argue that it is proper to represent to potential class members that a two-plaintiff lawsuit is a class action because courts have occasionally referred to pre-certification class actions as a "class action" in an opinion, and because Plaintiffs were required to identify it as such on the Northern District of Illinois civil cover sheet. These arguments are weak, at best. A court using the term "class action" in an opinion to refer to a case, or a plaintiff checking the "class action" box on a civil cover sheet, are wholly different from telling a non-attorney potential class member in a official looking notice

that this is a "class action" pending in federal court, when it has not, in fact, been certified as such. "[U]napproved communications to class members that misrepresent the status or effect of the pending action . . . have an obvious potential for confusion and/or adversely affecting the administration of justice. *See Waldo v. Lakeshore*, 433 F. Supp. 782 (E.D. La. 1977).

   B.   **Plaintiffs' Counsel Has Failed To Engage In Compromise In Order To Determine An Agreeable And Fair Procedure For Communications Going Forward.**

Plaintiffs' motion reads as though Plaintiffs are permanently barred from communicating with potential class members. Plaintiffs state, "the Court barred Plaintiffs from communicating with putative class members, absent the acquiescence of Defendant or further order of the Court." In fact, this Court enjoined Plaintiffs' counsel from communicating with putative class members in the improper manner Plaintiffs' counsel been engaging in, and ordered that Plaintiffs' counsel conference with opposing counsel in order to work out a procedure for contacting potential witnesses and/or class members going forward. The Court further stated that if counsel cannot agree on such a procedure, counsel may move this Court to approve a suggested mechanism for contacting potential witnesses and/or class members. (Ex. 2).

   1. **Plaintiffs' Counsel Has Not Properly Conferred With Defense Counsel Pursuant to the July 15 Order.**

Despite the Court's clear instruction that the parties work out a manner of correcting Plaintiffs' initial improper communication, Plaintiffs' counsel have been unwilling to work out a procedure that properly cures the premature notice and solicitation of putative class members. Plaintiffs' counsel has insisted that the only option is to send a second letter to the entire group of potential plaintiffs, and they have refused to compromise whatsoever from their position.

On July 15, Plaintiffs' counsel Douglas Werman sent defense counsel a draft letter, proposing this letter be sent to potential class members. (*See* Exhibit 3). This proposed letter was unacceptable to defense counsel, as it did little to cure the negative effects of the July 2 Notices. Rather, the draft letter does little more than state that the lawsuit has not yet been certified as a class action, but in no way undoes the harm caused by the improper solicitation in the July 2 Notices.

On July 16, Outback's counsel notified Mr. Werman that they were in receipt of his draft letter and that Outback had concerns with the draft letter. Both parties' counsel exchanged voice messages on July 17, and on July 18, Outback's counsel sent Mr. Werman an email explaining Outback's position. Outback's counsel explained their belief that allowing Plaintiffs' counsel to send yet another letter to putative class members is an insufficient remedy to cure the initial improper communication. Instead of mending past wrongs, the second letter would actually exacerbate the negative effects of the initial communication. Outback's counsel proposed that alternatively, Outback send correspondence to those individuals who received the initial improper communication, and that the parties work together to mutually agree to the content of the letter. (*See* Exhibit 4).

On July 22, having not heard back from Mr. Werman since sending the July 18 correspondence, Outback's counsel again sent an email communication to Mr. Werman, explaining that they would like to discuss each parties' proposals at Mr. Werman's earliest convenience. (*See* Exhibit 5). In response, on July 23, Mr. Werman sent an email communication to Outback's counsel entirely rejecting defense counsels' suggested procedure, stating incorrectly that it would be a "cumbersome procedure that, among other things, would give you final approval over our communications with the putative class." Rather than address

defense counsel's concerns with his proposed draft letter, Mr. Werman stubbornly re-proposed his initial draft letter with few changes, showing no willingness to compromise. (*See* Exhibit 6).

On July 28, Outback's counsel responded to Mr. Werman's July 23 email, explaining that they took issue with Plaintiffs' counsel's suggestion that Plaintiffs' counsel send *another* communication to the individuals previously (and improperly) contacted about the lawsuit. Outback's counsel reiterated that an additional letter from Plaintiffs' counsel to putative class members communicating that a class has not yet been certified would not cure the harm inflicted by the premature, improper notice and solicitation, and would instead only burden and confuse the recipients. Instead, Outback's counsel suggested that Outback send the corrective letter, and offered that counsel work *together* on the substance of such a letter. (*See* Exhibit 7).

On July 30, Mr. Werman responded by simply reiterating his proposal. Mr. Werman refused to compromise and again proposed his draft letter to all recipients of the initial improper communication, without addressing any of Outback's concerns. Mr. Werman also stated if defense counsel would not agree to his proposal, he would consider the parties to be at impasse. (*See* Exhibit 8).

On August 4, Outback's counsel responded to Mr. Werman's July 30 correspondence by suggesting that counsel for both sides speak by telephone to see whether there is any way to work out a compromise short of filing a motion. (*See* Exhibit 9). Instead of accepting Outback's invitation to communicate, Plaintiffs' counsel filed this motion for reconsideration.

Simply put, Plaintiffs' counsel has not followed this Court's order that they confer with Outback's counsel in order to work out a procedure for contacting potential witnesses and/or class members going forward. Instead, Plaintiff's counsel proposed that they send out a

11

*second* communication that failed to cure the improper premature notice and solicitation of putative class members. Plaintiff's counsel failed to address any of Outback's legitimate concerns with such a proposal, and would not entertain Outback's proposal that fairly balances the Plaintiffs' interest in communicating with potential witnesses against Outback's interest in remedying the harm caused by Plaintiffs' counsels' improper pre-certification actions. Outback's primary concern is that witnesses receive a fair and balanced picture of this lawsuit, while Plaintiffs' attorneys apparently do not share this concern.

### 2. Outback's Proposal Balances Plaintiffs' Right To Communicate With Witnesses Against Outback's Right That Prior Harm Be Cured.

Outback proposed the following:

1) That Plaintiffs' counsel provide Outback's counsel copies of the letter(s) that were sent, as well as the list of the recipients of the communication(s), including the addresses to which the correspondence was sent and the date on which the correspondence was sent.

2) That Plaintiffs' counsel provide defense counsel with a list of the recipients of the letter(s) with whom Plaintiffs' counsel have had any subsequent contact, as well as anyone who contacted Plaintiffs' counsel as a result of the letter(s).

3) Outback will then send correspondence to those individuals. The correspondence would have some but not all of the same components of the correspondence Plaintiffs' counsel proposed to send. Outback's counsel will provide Plaintiffs' counsel a draft of the correspondence for their review, and counsel will work together to mutually agree to the content of the letter.

4) Before Plaintiffs' counsel has any further communications with the recipients of the July 2 Notices, Plaintiffs' counsel will provide Outback's counsel with a list of

people who have contacted Plaintiffs' counsel in either direct or indirect response to the July 2 Notices. The mutually agreed corrective letter will be sent to these people in a more expedited fashion.

5) Until such time as Outback's letters go out and for a reasonable delivery period thereafter, Plaintiffs' counsel will not have discussions with anyone who contacts them as a result of the July 2 Notices.

Outback's proposal balances Plaintiffs' interest in communicating with witnesses against the harm Plaintiffs' counsel caused by seeking opt-ins before any class was certified. The proposal ensures that before Plaintiffs' counsel speak with witnesses, these witnesses receive a balanced picture of this case, rectifying the improper initial communication so that potential class members are not confused. Under this proposal Plaintiffs' counsel has legitimate access to potential witnesses, while the negative effect of the improper letter are cured, thus minimizing further disruption to Outback restaurant operations, and preventing unnecessary burden or confusion for potential class members. The Court should therefore adopt Outback's proposed resolution, or else direct the parties to meet and confer to work this out.

## IV.   CONCLUSION

For the aforementioned reasons, this Court should deny Plaintiffs' motion for reconsideration.

DATED: August 6, 2008

Respectfully submitted,

/s/ Jane M. McFetridge

Jane M. McFetridge
Nadine Abrahams
Jackson Lewis LLP
320 W. Ohio Street, Suite 500
Chicago, Illinois 60610

(312) 787-4949
Fax: (312) 787-4995

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on August 6, 2008, she caused a true and correct copy of the foregoing Defendant's Memorandum In Opposition To Plaintiffs' Motion For Reconsideration Of The Court's Order Barring Plaintiffs' Counsel From Communicating With Putative Class, to be filed with the Court by the Court's ECF/CM electronic filing protocols, and that same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system.



/s/ Jane M. McFetridge