1

```
 1              IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3   DENEENE D. ERVIN, ELIZABETH L.    )
     DYE and DAWN HARDY, on behalf of  )
 4   themselves and all other persons  )
     similarly situated, known and     )
 5   unknown,                          )
                                       )
 6              Plaintiffs,            )
                                       )
 7     vs.                             )   No. 08 C 1091
                                       )
 8   OS RESTAURANT SERVICES, INC.,     )
     d/b/a OUTBACK STEAKHOUSE,         )   Chicago, Illinois
 9                                     )   July 15, 2008
                Defendant.             )   9:30 a.m.
10
                       TRANSCRIPT OF PROCEEDINGS
11             BEFORE THE HONORABLE RONALD A. GUZMAN

12
     APPEARANCES:
13
     For the Plaintiffs:        LAW OFFICES OF JAMIE G. SYPULSKI
14                              BY:  MR. JAMIE G. SYPULSKI
                                122 South Michigan Avenue
15                              Suite 1720
                                Chicago, Illinois  60603
16                              (312) 360-0960

17                              WERMAN LAW OFFICE, P.C.
                                BY:  MS. MAUREEN ANN BANTZ
18                                   MR. DOUGLAS M. WERMAN
                                77 West Washington Street
19                              Suite 1402
                                Chicago, Illinois  60602
20                              (312) 419-1008

21   For the Defendant          JACKSON LEWIS LLP
                                BY:  MS. JANE M. McFETRIDGE
22                                   MS. NADINE C. ABRAHAMS
                                320 West Ohio Street
23                              Suite 500
                                Chicago, Illinois  60610
24                              (312) 787-4949

25
```

| | | |
|---|---|---|
| 1 | Court Reporter: | NANCY C. LaBELLA, CSR, RMR, CRR |
| 2 | | Official Court Reporter |
| | | 219 South Dearborn Street |
| 3 | | Room 1222 |
| | | Chicago, Illinois  60604 |
| 4 | | (312) 435-6890 |
| | | Nancy_LaBella@ilnd.uscourts.gov |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

```
 1      (Proceedings heard in open court:)
 2          THE CLERK:  08 C 1091, Ervin v. OS Restaurant
 3   Services, Incorporated.
 4          MR. SYPULSKI:  Hello, again, Judge.  Jamie Sypulski
 5   on behalf of the plaintiffs.
 6          MR. WERMAN:  Morning, Judge.  Doug Werman,
 7   W-e-r-m-a-n, on behalf of the plaintiffs.
 8          MS. McFETRIDGE:  And Jane McFetridge,
 9   M-c-F-e-t-r-i-d-g-e, and Nadine Abrahams, A-b-r-a-h-a-m-s, on
10   behalf of the defendants.
11          MS. BANTZ:  And Maureen Bantz on behalf of the
12   plaintiffs.
13          THE COURT:  Good morning.
14          MR. WERMAN:  Good morning, Judge.
15          MS. McFETRIDGE:  Good morning.
16          MR. SYPULSKI:  Good morning, Judge.
17          THE COURT:  So what do we have?
18          MS. McFETRIDGE:  We have two motions, your Honor.
19   The first by plaintiffs to -- requesting additional time in
20   which to file a motion for class certification.  And the
21   second by defendants seeking to enjoin plaintiffs from
22   providing notice to, soliciting or communicating with
23   prospective plaintiffs in the absence of conditional
24   certification.
25          THE COURT:  What's the response to the plaintiffs'
```

1  motion?

2  MS. McFETRIDGE: We are opposed to it. The basis of
3  their motion is the Garibay case that just preceded ours.

4  THE COURT: Sounds familiar.

5  MS. McFETRIDGE: We do not have a motion -- a
6  12(b)(6) motion like they have in Garibay. We have not raised
7  this issue. If plaintiffs were to have their way, then
8  virtually any FLSA action pending before you should be stayed
9  pending the outcome of this ruling on the Garibay case --
10 completely unrelated to ours -- and, frankly, probably the
11 rest of the FLSA actions in the Northern District of Illinois.

12 THE COURT: Wow. You think I can do that?

13 MS. McFETRIDGE: Maybe. I mean it is -- why that
14 case would have any effect on our case is -- the time for us
15 to file a 12(b)(6) motion, which is what's at issue in
16 Garibay, has long since passed. We haven't raised that issue.
17 And why our case should be held up based on this proceeding in
18 another case is completely --

19 THE COURT: Do you want to respond to that?

20 MR. WERMAN: I do. I think that the issue needs to
21 be resolved by this Court.

22 But in addition to that, Judge, this case is 78 days
23 old. They answered this complaint on April 28, and we
24 received discovery from them on or about June 16 or June 17.
25 And in that response was none of the time information, none of

1  the payroll information for the plaintiffs, none of the
2  information for the potential class members.
3       The case is 78 days old. And we're not in a position
4  right now, Judge, to be filing a motion for class
5  certification and a motion for collective action on Thursday.
6  And in light of the issue that's before the Court in --
7       THE COURT: I was about to say that's different
8  from --
9       MR. WERMAN: It's different. I think it's in
10  addition to, Judge, but it's all highly intertwined.
11       THE COURT: Well --
12       MR. SYPULSKI: Judge, it would be hard to fathom that
13  counsel would not be filing the identical motion in a -- in a
14  motion we would file for class certification. They're going
15  to raise as issue number one the incompatibility argument
16  that's before the Court in Garibay.
17       THE COURT: Well, whether they do or not I think
18  doesn't really resolve my problem, which is a real question as
19  to whether or not the two actions are compatible; if they're
20  not, or even if they are, how we're going to make them
21  compatible. That has to be resolved, whether you object to it
22  or not, whether you raise it or not.
23       MS. McFETRIDGE: That's --
24       THE COURT: We need to have notices to the possible
25  members of both classes that are not going to contradict each

1   other and confuse them and --
2          MS. McFETRIDGE:  I do agree with that.  But I will
3   also point out -- I mean, I need to take issue with some
4   things that have been said.  We have responded to them
5   relative to discovery; and they have -- which brings us to our
6   second motion, our motion.
7          THE COURT:  Well, let's stick with the first one for
8   now.
9          MS. McFETRIDGE:  Okay.
10         THE COURT:  I think I'm going to grant that motion.
11  I would like to have one clear ruling and one set of
12  procedures that we can apply to any case that involves this
13  issue, either before me now or in the future.  So I'm going to
14  grant that motion.
15         We'll stay or withhold or delay the filing of the
16  request for class certification or conditional certification
17  until after we've ruled on the issue that's before us in the
18  other case.
19         Your motion then is with respect to contacting the
20  prospective class members; is that correct?
21         MS. McFETRIDGE:  Right.  And just to put this in the
22  correct context for you, the timeline of what's transpired
23  here, on July 1st, Deneene Ervin, who is the lead named
24  plaintiff, didn't show up for her deposition.  And then based
25  on our discussions with opposing counsel, it appears she'll no

1  longer be proceeding as part of this lawsuit.  She
2  incidentally was the only person who had worked in more than
3  one restaurant for Outback.
4      The other two named individuals, Elizabeth Dye and
5  Dawn Hardy, were deposed on July 2 and 3, respectively.  Those
6  two individuals have only worked for the Calumet City Outback.
7  Dawn Hardy no longer is employed there.  In fact, she resides
8  in Mississippi.  And Elizabeth Dye is the only person who is
9  still a current member of -- is currently employed by Outback.
10     The two individuals provided vastly different
11 testimony about their experiences at Outback and their
12 experiences with side work.  For instance -- and -- for
13 instance, there is a claim here that the plaintiffs weren't
14 paid overtime.  Elizabeth Dye testified that she was never
15 uncompensated for overtime.
16     In any event, on July 2, immediately after one of
17 their named plaintiffs backs out and the other two provide
18 testimony that they really don't know of anyone else to be
19 involved in the lawsuit or who is interested in belonging to
20 the lawsuit, they send out notifications to this list of
21 employees that we produced pursuant to discovery, basically
22 soliciting them to belong to this lawsuit and notifying
23 them -- it's a class notification.  It was done without this
24 Court's imprimatur, without any discussions with us; sent to
25 our employees.  It created a complete imbroglio at -- at

1  our -- at our offices.  It was very disruptive to the way our
2  businesses were conducted.
3       And then lo and behold, immediately after that, they
4  filed this motion claiming that they need additional time for
5  certification.  In point of fact, really what they're doing is
6  trying to garner time to go out and troll for additional
7  plaintiffs because they don't have a case here.
8       THE COURT:  You think they're trolling?
9       MS. McFETRIDGE:  Yes, I think they're trolling.
10      And then most recently, they've interjected
11 themselves into disciplinary discussions with our employees.
12 Yesterday -- after -- after these notices went out, as you
13 might expect, the employees came to their managers and said
14 what's the story, what's going on.  My client had a meeting,
15 advised them that this lawsuit was pending, that we disagreed
16 with it, that we intended to defend it.  They could choose to
17 respond to that letter or not.
18      Thereafter, Ms. Dye took it upon herself while on the
19 clock to approach other employees also on the clock and
20 solicit them to become involved with the lawsuit.  That's
21 contrary to the company's solicitation policies.  And,
22 furthermore, it's -- you shouldn't be doing that sort of thing
23 while you're on the clock.  What she does on her own time is
24 her business.  But when she's being paid, she needs to be
25 doing what she's hired to do.  She, during the course of a --

1              THE COURT:  Well, we're kind of sliding over into
2    other issues at this point I think.
3              MS. McFETRIDGE:  Well --
4              THE COURT:  How do you respond --
5              MS. McFETRIDGE:  For a minute let me complete what
6    I --
7              THE COURT:  Sure.
8              MS. McFETRIDGE:  -- because the -- what I'm going to
9    conclude with does deal with this exactly.
10             While she was in a meeting with her manager about --
11   in which he was telling her you can't solicit while you're on
12   the clock, she picked up a phone and called her counsel who
13   told her not to engage in discussions with them relative to
14   this lawsuit or any sort of discipline that might involve this
15   lawsuit and not to sign a disciplinary notice.
16             So they're now injecting theirselves into day-to-day
17   operations of our -- of our business in a very disruptive and
18   inappropriate fashion.
19             MS. BANTZ:  Judge, actually I'd like to comment on
20   that last --
21             THE COURT:  Who's going to respond to this?
22             MR. WERMAN:  Judge, I'm going to respond.
23             THE COURT:  She sounds like she wants to.
24             MR. WERMAN:  She -- go ahead, Maureen.
25             MS. BANTZ:  I just have one small point to make

1  towards that last conversation that happened yesterday.
2           Elizabeth Dye did call our offices, indicated that
3  the company wanted her to sign a statement and it related to
4  this lawsuit. And I informed her that she -- we would like to
5  see what the company is wanting her to sign before she's
6  signing anything. And, you know, that's the point that I want
7  to make.
8           THE COURT: Okay. Go on.
9           MR. WERMAN: Judge, this whole motion that they filed
10 is really based upon this false premise. And the false
11 premise is that we've sent out a Rule 23 notice or collective
12 action notice. We haven't.
13          Judge, what we sent out were investigation letters so
14 we could develop facts to support the motion for class
15 certification and an opt-in motion.
16          What -- what defendants don't do in their motion, in
17 their brief, is they don't cite the U.S. Supreme Court case
18 that addresses this issue. And that's Gulf Oil. You don't
19 see it anywhere in their papers. And Gulf Oil says we're
20 allowed to have communications with class members. And that's
21 what we've done. The letter is attached to their memorandum
22 of law. I think it's Exhibit A or Exhibit 1.
23          It's flat. It's neutral. It doesn't purport to be
24 an opt-in notice. It doesn't purport to be Rule 23 notice.
25 We don't include consent forms.

1               And, Judge, we've interviewed people.  Okay.  People
2    have responded to these letters, and we haven't had them sign
3    consent forms.  We haven't had them join the case.  We're
4    investigating the case.
5               And, curiously, they have a footnote in their brief,
6    Judge.  It's footnote one.  And it says something like -- I'm
7    paraphrasing.  It says, hey, you know, plaintiffs could have
8    previously communicated with the class, but they just can't do
9    it now.
10              Well, again, this case, it's 78 days old, Judge.  And
11   so if -- we have done it, and we did it previously.  We're
12   doing it now.  And it's timely.  It's permissible.  And I
13   think that as proposed class counsel, we have an obligation, a
14   fiduciary obligation, to investigate the claims, to talk to
15   class members and develop the facts of the case.  It's not a
16   solicitation letter.  It's an investigation letter.
17              MS. McFETRIDGE:  The Gulf Oil case addresses
18   communications with class members.  There are no class members
19   here.  This is not a class action yet.  And that letter does
20   state that this is a class action.  If you read that letter --
21   and counsel knows this very well -- that letter is tantamount
22   to a notification to the class.  It largely parrots what a
23   notification to the class would say or what they would want it
24   to say.
25              THE COURT:  Well, there's a reason why we like to

1  supervise communications to prospective class members; and
2  it's to avoid exactly this sort of thing.  If we do that, for
3  one thing, opposing counsel is given an opportunity to prepare
4  themselves -- which apparently they didn't have in this
5  case -- prepare an explanation for their employees who come
6  with questions after receiving the notification, whether it's
7  a notice, a letter or whatever.  They also have an opportunity
8  to object to any misstatements in the communication to their
9  employees, which they didn't have a chance to do in this case.
10 And if the letter does say that this is a class action, that's
11 a misstatement.  This is not a class action.
12         There hasn't been -- well, first, I'm not even sure
13 the term "class action" is appropriate, given the FLSA
14 verbiage.  But assuming that it is, this Court hasn't
15 conditionally or in any other way certified a class.  You
16 haven't even proposed to us what the class parameters are.
17 And I can see where counsel would be upset by that.  And,
18 clearly, if you announce that it's a class action, you are in
19 a way, no matter what you call your communication, sending a
20 notification of class action to these employees.  You ought
21 not to have done that without the Court's approval.  You ought
22 not to have done it without first advising opposing counsel.
23 And I'm going to sustain the motion to enjoin in that regard.
24         Now, if you want to communicate with proposed class
25 members, which you have a right to do in a certain way and

1  under certain circumstances, you file a motion with the Court,
2  give opposing counsel notice, and we will make a determination
3  as to what the appropriate way to do that is that is fair to
4  both sides.
5          Anything else?
6          MR. WERMAN:  Judge, I'm going -- I guess we're going
7  to need some direction then from the Court in terms of
8  communications that we're going to have with people who are
9  going to respond to these letters.  I had hoped at a minimum
10 to file a written response to this motion.  I don't think that
11 there's a basis for this motion.  We are in the process of
12 communicating with people who have responded.
13         THE COURT:  So why don't you communicate with each
14 other first.  You may not need to talk to me after you talk to
15 her.  And you may also be able to iron out issues like what
16 your client is going to be saying to employees during working
17 periods at the place of employment about this lawsuit.  But
18 that's why you should be talking, and that's why you should
19 have notified opposing counsel and filed a motion first.
20         MS. BANTZ:  Judge, if I may actually follow up for a
21 little clarification?  With the class members who have called
22 us though, are you specifically -- are we permitted to be
23 talking to those people on the telephone and investigating the
24 claims?
25         THE COURT:  Well, it's a bit of a difficult

1  proposition, you know.  You want to hold off on class
2  certification, but you want to proceed as if this is a class
3  action; and you can't do that.
4       No, you can't communicate with the people who you
5  have contacted and are responding to this contact which you
6  did without Court approval and without notifying opposing
7  counsel.
8       What you can do is have a conference with opposing
9  counsel and see if you can work out a procedure for contacting
10 people who may very well have information and facts and who
11 may be witnesses and/or class members in this case and/or you
12 can file a motion with the Court seeking approval for a way of
13 doing that.
14      MR. SYPULSKI:  Judge --
15      THE COURT:  Call the next -- go ahead.
16      MR. SYPULSKI:  You're -- to the extent that -- you're
17 granting the motion to the extent of communications with
18 putative class members.  Now they've asked for a lot of other
19 relief there.
20      THE COURT:  What I'm granting is a motion enjoining
21 communication with putative class members in the manner that
22 you've done it so far.  And I'm telling you in response to
23 your co-counsel's response, that that means that the people
24 who have responded to this notification and have contacted you
25 solely because of that, yeah, you can't talk to them either

1  because you ought not to have issued the notification in the
2  first place.
3      Do you understand the parameters of my ruling?
4      MR. SYPULSKI: Yes, Judge.
5      THE COURT: Okay. Let's reset the status from Friday
6  to 30 days out. I don't think we need to be back here before
7  then.
8      THE CLERK: Yes, your Honor.
9      MR. SYPULSKI: Your Honor, can I -- can I ask one
10 final question? Will you entertain something from us, a brief
11 or motion, what have you, that addresses the issue because --
12     THE COURT: Of course I would. I just said that you
13 have --
14     MR. SYPULSKI: Well --
15     THE COURT: -- two things that I think you ought to
16 do, one is talk to opposing counsel because then you may not
17 have to file a motion before me. You may be able to work it
18 out with them. I think it's pretty clear, and I think they
19 understand, that you have certain rights to contact parties
20 and/or witnesses in this case who may be their employees.
21     And then second thing, that failing, is to file a
22 motion before the Court indicating how you intend to make that
23 contact.
24     MR. SYPULSKI: Yes, your Honor.
25     THE COURT: Okay.

1     MR. SYPULSKI:  Thanks, Judge.

2     THE CLERK:  Status hearing reset, August 27 at 9:30.

3     MR. SYPULSKI:  Thank you, Judge.

4     MS. BANTZ:  Thank you.

5  (Which were all the proceedings heard.)

6                C E R T I F I C A T E

7     I, Nancy C. LaBella, do hereby certify that the

8  foregoing is a complete, true, and accurate transcript of the

9  proceedings had in the above-entitled case before the

10 Honorable RONALD A. GUZMAN, Judge of said Court, at Chicago,

11 Illinois, on July 15, 2008.

12

13    /s/ Nancy C. LaBella                    7/25/08
   _____          _____
14       Official Court Reporter               Date
       United States District Court
15      Northern District of Illinois
              Eastern Division

16

17

18

19

20

21

22

23

24

25